[No. 24093. Department One. January 7, 1933.]

L. L. FARMER *et al., Appellants,* v. SCHOOL DISTRICT No. 214, *Respondent.*[1]

[1]Reported in 17 P. (2d) 899.

*George F. Hannan* and *A. A. LaFromboise,* for appellants.

*Poe, Falknor, Falknor & Emory,* for respondent.

PARKER, J.—The plaintiffs, Farmer and wife, commenced this action in the superior court for King county, seeking recovery of damages for injuries to the person of Mrs. Farmer and injuries to their automobile, claimed as the result of the alleged negligence of the defendant school district in the driving by its servant of its school bus. Trial in that court, sitting with a jury, resulted in verdict and judgment denying to Farmer and wife recovery, from which they have appealed to this court.

The controlling facts, as we think the jury were warranted in viewing them, and evidently did view them, may be fairly summarized as follows: One of

the grade schools of the district is situated in the town of Enumclaw. During the afternoon of the day of the accident, one of the busses of the district was being used in transporting scholars from that school to their homes in the neighboring country westerly of Enumclaw. One load of scholars had been taken to their homes. While the bus was returning to the school for another load of scholars, the community automobile owned by Farmer and wife and being driven by Farmer came into collision with it at the intersection of Griffin avenue and Franklin street, in Enumclaw.

Griffin avenue runs east and west. It has a paved roadway thirty-two feet wide from curb to curb. It is intersected at right angles by Fell street, which also has a paved roadway thirty-two feet wide from curb to curb. The school occupies the block bounded on the east by Fell street and on the south by Griffin avenue. It was the custom to stop the bus for the scholars to board it at the curb on the west side of Fell street, headed south, so the scholars would not have to cross the roadway. Two hundred and twenty-five feet east of Fell street, Griffin avenue intersects Franklin street at right angles. Franklin street has a graveled roadway thirty-two feet wide from curb to curb. It was customary for the bus to come from the west along Griffin avenue and turn to its left, north, into Franklin street around the block, turning back to the south into Fell street, and stop for the scholars at the west curb of Fell street in front of the school.

The bus was a large one, its body being about twenty-five feet long. It did not have a mechanical arm signal which could be used to indicate the intention of its driver to turn to the right or to the left to enable drivers of cars approaching it from the rear

to be so advised, as is contended by counsel for Farmer and wife it should have been so equipped, because of the width of its body and the curving of the front portion of its body inward so that its driver could not, with his hand and arm, properly signal his intention to turn to the right or to the left and so advise the drivers of cars approaching from the rear. Its driver's seat, however, was so situated, and the window of the bus immediately to its left so constructed, that the driver was enabled to properly signal his intention to turn to the right or left, by the extending of his arm and hand, so that a driver of a car approaching from the rear on a course passing the bus on the left could readily see such signal on such course from some distance in the rear of the bus.

By reason of the length of the bus, it was very difficult to turn in a street intersection of pavements only thirty-two feet wide between curbs and at the same time go clear around the exact center of such an intersection. This, apparently, could be done only by driving very close to the right hand curb of both streets at the beginning and at the end of such turn, which, at best, would bring some portion of the left side of the body of the bus over the exact center of the intersection.

On the return of the bus from its first trip that afternoon, just before the occurring of the accident, it was being driven east along Griffin avenue, approaching Fell street and Franklin street, followed by the Farmer car. At about Fell street, Farmer had come up to the rear of the bus and then contemplated passing it, but was for the moment prevented from doing so by the passing of another car coming from the opposite direction.

At nearly the middle of the block, one hundred feet or more west of Franklin street, Farmer turned out to his left to pass the bus and came up alongside of the rear of the bus, so that from his driving seat he could readily observe any hand signal that might be given by the driver of the bus indicating his intention to turn to the left into Franklin street. The jury could well believe from the evidence that the bus driver was, during practically the whole of his driving from near Fell street to Franklin street, holding his left hand out of the window by his driving seat, plainly signaling his intention to turn to the left into Franklin street, though such signaling might not have been readily visible to a driver of a car approaching directly in the rear of the bus.

The evidence is in conflict as to whether or not Farmer gave any sound of his horn, indicating his desire or intention to pass the bus. The driver of the bus, upon reaching a point near the south curb line of Griffin avenue and the west curb line of Franklin street, withdrew his hand, and immediately, using both hands, which was necessary, commenced turning the bus to his left into Franklin street, as nearly clear around the center of the intersection as possible, on a curve, ending with the bus coming close to the east curb of Franklin street at the northeast corner of the intersection.

While the bus was so turning, the Farmer car came into collision with the left side of the body of the bus over and immediately to the rear of its left rear wheel. Farmer had turned somewhat to the left in his delayed effort to avoid the collision, thus causing the right side of his car to come into collision with the left side of the bus, damaging only his right front and rear fenders and slightly damaging the body of the bus. When the

bus began to turn, it was traveling at approximately fifteen miles per hour. The Farmer car was moving but little faster. It could have been stopped within a distance of approximately twenty feet, according to Farmer's testimony.

The evidence was such as to well support the conclusion, which the jury evidently entertained, that, when Farmer first saw the bus about to turn, it was a sufficient distance ahead of his car to enable him to have avoided the collision, in view of his ability to stop his car and the room he had to turn to the left. The bus came to rest almost immediately after the collision close alongside the east curb of Franklin street, with its rear very nearly even with the north curb line of Griffin avenue. Farmer's car came to rest alongside the bus pretty well over towards the west curb of Franklin street. Its position might well be accounted for by the glancing blow it struck the bus. Farmer was well acquainted with all of these streets and the traffic thereon, including the customary route of the school bus. In any event, he knew when following the school bus that it was likely to turn to its left either into Franklin street or to its left into the street next farther east.

One of the grounds of the motion for new trial made in the trial court in behalf of Farmer and wife is "insufficiency of the evidence to justify the verdict." It is here argued, as we understand counsel, that the evidence calls for decision, as a matter of law, that the driver of the bus was guilty of negligence in "cutting the corner" while making his left turn, and that such negligence became the proximate cause of the accident.

There does seem to be room for arguing, as a matter of law, that the driver of the bus was technically negligent in not driving clear around the exact center

of the intersection, in view of the provision of chapter 309, Laws of 1927, p. 803, § 41, Rem. Rev. Stat., § 6362-41, reading as follows:

"It shall be the duty of every person operating or driving any motor or other vehicle or riding or driving any animal along or over any public highway and approaching any intersection of a street, road or highway, with the intention of turning thereat to the right, to keep to the extreme right, and with the intention of turning thereat to the left to proceed to any point beyond the center of the intersection before turning."

However that may be, it seems clear to us that it should not be decided, as a matter of law, that such technical violation of the statute became the sole, proximate cause of the accident. Clearly, we think the jury was well warranted by the evidence in concluding that the negligence of Farmer in the manner of his driving, in the light of the knowledge of the situation he then possessed, or should have possessed by proper attention, was, at all events, a substantial contributing cause of the accident. Indeed, the evidence, as we view it, warranted the jury in concluding that Farmer's negligence was a greater contributing cause of the accident than the mere technical "cutting the corner" by the driver of the bus.

Some further arguments are advanced in support of the contention that a new trial should be granted upon the ground of the insufficiency of the evidence to justify the verdict. We think it is enough to say in answer to these arguments that they seem to us plainly to be arguments upon the weight of conflicting evidence. We conclude that the trial court did not err in refusing to grant a new trial upon the ground of the insufficiency of the evidence to justify the verdict.

It is next contended in behalf of Farmer and wife that the trial court erred to their prejudice in giving to the jury the following instruction:

"Even though you find from the evidence in this case that the School District was negligent in failing to equip the school bus with a mechanical or electrical device capable of displaying signals to the rear of the bus as to the intention of the driver to turn, still if you further find from the evidence that the driver of the school bus gave a timely arm signal of his intention to turn prior to the time he turned to the left, and that the plaintiffs' automobile was operated to the left of the bus and from his position on the street he saw, or in the exercise of ordinary care ought to have seen, such arm signal, then under such circumstances, members of the jury, the failure of the School District to provide such mechanical device is immaterial to a determination of this case and should be disregarded by you, because under such circumstances the failure to provide such device would not be the proximate cause of the accident."

In chapter 309, Laws of 1927, p. 804, § 41 (Rem. Rev. Stat., § 6362-41), following provisions prescribing the giving of hand and arm signals indicating the intention of a driver to turn to the right or left at street intersections, we read:

"Mechanical devices capable of producing signals as to the intention of the driver to stop or turn such vehicle and approved by the commission on equipment may be used.

"All vehicles operated on the highways of this state which are so constructed that hand and arm signals given by the driver are not visible at the rear of said vehicle, must be equipped with a suitable mechanical or electrical device approved by the commission on equipment capable of displaying unmistakable signals as to the intention of the driver to stop or turn such vehicle."

The argument is, in substance, that, because the bus was not equipped with a mechanical signaling device "visible at the rear," Farmer was not bound to take notice of any hand and arm signal given by its driver of his intention to turn to the left in the intersection.

It seems clear to us that, when a hand and arm signal is timely given by a driver of a vehicle of his intention to turn at a street intersection, plainly visible to a driver approaching from his rear on his left, then it is immaterial whether or not his vehicle is one required to be equipped with a mechanical signaling device. The statute does not, in terms, say when a mechanical signaling device shall be used. The statute, of course, does inferentially express the intent that a mechanical signaling device shall be used when the usual hand and arm signal cannot be given and rendered visible to a driver approaching from the rear.

It could well be argued from the evidence that one driving directly in the rear of this bus could, by proper attention, have seen a hand and arm signal given therefrom, as the evidence tends to show that the driver of the bus gave. However, it is, at all events, clear that there was abundant evidence warranting the jury in concluding that a timely hand and arm signal was given by the driver of the bus, plainly visible to Farmer as he approached the rear of the bus on a course to its left, for a distance of at least nearly a hundred feet before the bus commenced to turn. We conclude that this instruction was correct in its terms, and was appropriate to be given under the evidence.

█ It is next contended in behalf of Farmer and wife that the trial court erred to their prejudice in giving to the jury the following instruction:

"Even though you find from the evidence in this case that the School District or its driver was negligent in one or more of the particulars charged in the complaint, yet if you further find from the evidence that after the plaintiffs saw the school bus in the act of making the turn, plaintiffs, in the exercise of ordinary care and diligence on their part, could have stopped, slowed down or turned their car in time to have avoided the accident and failed to do so, then under

such circumstances the plaintiffs cannot recover and your verdict must be for the defendant.''

It is argued that there is no evidence warranting the giving of this instruction. We think there is. There was evidence that the Farmer car, as well as the bus, was moving at a very moderate rate of speed just before the accident; that the Farmer car could have been stopped within about twenty feet distance; that Farmer saw the bus commence to turn when he was to its left and some distance to its rear; that the driver of the bus gave a timely hand and arm signal of his intention to turn, continuously, for a distance of at least one hundred feet before he commenced to turn; and that Farmer saw, or by proper attention should have seen, that signal approximately during the whole of that distance of the driving of the bus and his own car. We conclude that it was for the jury, and not for the court, to decide as to whether or not Farmer could have avoided the accident, and that this instruction correctly submitted that question to the jury.

It is next contended in behalf of Farmer and wife that the trial court erred to their prejudice in giving to the jury the following instruction:

''I instruct you that the laws of the state of Washington, at the time of the accident, provided as follows: 'The signal of an intention to pass shall be given by one blast or stroke of the horn or other signaling device. Should the overtaken vehicle then not give way, three such blasts or signals shall be given, and upon the failure to comply therewith, the overtaking vehicle may at the next suitable place safe for both vehicles go by without further signal.'

''If you find from the evidence in this case that the plaintiffs started or attempted to pass the school bus without giving the signals provided by this law, then the plaintiffs were guilty of negligence, because it is

the law that a violation of a positive traffic provision is in itself negligence, and if you further find that such negligence caused or contributed to the accident then the plaintiffs cannot recover and your verdict must be for the defendant.''

It is argued that this instruction is prejudicially erroneous, in that it includes the second paragraph of the quoted statutory provisions and instructs the jury with reference to Farmer's duty in giving the required ''three such blasts,'' because there was no evidence of any necessity therefor; that is, that there was no evidence of the failure of the bus to ''give way.'' It seems to us that there was evidence of the failure of the bus to give way, of which Farmer should have taken notice. For a distance of approximately one hundred feet of the driving of his car and the bus just prior to the accident, as the jury could well believe from the evidence, Farmer was advised by the hand and arm signal of the driver of the bus of his intention to turn in the intersection; and was further advised of such intention by the actual commencing of the turning of the bus upon its coming to the west boundary of the intersection. It seems to us that the instruction as relating to the ''three blasts'' statutory requirement was not so plainly inappropriate under the evidence as to call for our deciding that its giving was erroneous to the prejudice of Farmer and wife.

It is next contended in behalf of Farmer and wife that the court erred to their prejudice in refusing to give to the jury their requested instruction reading as follows:

''You are instructed that if you find from the evidence that the plaintiffs attempted to pass defendant's school bus at a street intersection, that that fact, if it be a fact, is not in and of itself negligence, and you are instructed that the plaintiffs had a right to pass said

school bus when it was going across the street intersection.''

We are unable to see any substantial reason for the giving of this instruction. We find nothing in the record which would be likely to suggest to the jury that Farmer would not have as much right to pass the bus on the left while crossing a street intersection as to pass it on the left anywhere else; assuming, of course, that the bus was proceeding straight across the intersection without its driver giving any signal of intention to turn. We are of the opinion that it was not error to the prejudice of Farmer and wife for the trial court to fail to give this requested instruction.

It is finally contended in behalf of Farmer and wife that the trial court erred to their prejudice in admitting in evidence, over their counsel's objection, the school district's exhibit consisting of a photograph of the bus with the driver sitting in the driver's seat therein extending his left hand and arm through the open window at his left, as if signalling his intention to turn to the left. There was testimony that the photograph was taken from a position a short distance to the rear of the bus and approximately eight feet to the left of the line of the left side of the bus. There was also testimony that, as Farmer approached the bus from its rear on its left, his sitting in the driver's seat placed him along a line parallel with the left side of the bus passing through the position from which the photograph was taken. Indeed, his own testimony rather plainly so shows.

There was also testimony that the driver's sitting in the bus, with his hand and arm extended through the left open window, as shown in the photograph, is the same position in which he was sitting, with his hand

and arm so extended, for a distance of at least one hundred feet immediately before turning upon entering the intersection just prior to the Farmer car coming into collision with the side of the bus. We are of the opinion that this photograph was admissible in connection with the testimony of its taking.

The record appears to us to show that Farmer and wife had a fair trial, free from prejudicial error. The judgment is affirmed.

TOLMAN, C. J., MITCHELL, HOLCOMB, and MILLARD, JJ., concur.

