DOROTHY HUNT, BY HER NEXT FRIEND, MRS. AUGUSTA H. HUNT, v. JOHN F. WOOTEN, JR., JOHN F. WOOTEN, SR., AND E. W. PRICE, GUARDIAN AD LITEM OF JOHN F. WOOTEN, JR.

(Filed 12 June, 1953.)

**1. Appeal and Error § 39e—**

In order to be entitled to a new trial for the admission of evidence, appellant must show, ordinarily, that he objected to its admission, that the evidence was inadmissible because incompetent or irrelevant, and that the evidence was prejudicial to his cause of action or defense.

**2. Evidence § 51—**

The finding of the trial judge that a witness is an expert is conclusive on appeal when sustained by the evidence.

HUNT *v.* WOOTEN.

**3. Evidence § 47f—**

A medical expert may testify from his examination of plaintiff as to the character, extent and probable effect of plaintiff's disfigurement.

**4. Evidence § 47e—**

It is competent for a nonexpert to point out to the jury the places where implanted skin had been grafted upon plaintiff's face to minimize the disfigurement resulting from plaintiff's injuries, since such testimony is merely describing the physical appearance of the plaintiff as observed by a nonexpert.

**5. Damages § 11—**

Where there is evidence that the injuries suffered by plaintiff are permanent in character, the mortuary tables are competent as evidence on the question of plaintiff's life expectancy. G.S. 8-46.

**6. Evidence § 30d—**

A fire hydrant struck by defendant's car may be introduced in evidence when there is testimony that it had not been altered in any way since the accident.

**7. Evidence § 30a—**

Where there is testimony that photographs taken of plaintiff before and after the injury were accurate likenesses at the times they were taken, the photographs are competent for the purpose of explaining the testimony of the witnesses.

**8. Same—**

Even though the hydrant struck by defendant's car was removed subsequent to the accident, a photograph of the scene is competent when the witness testifies that at the time the picture was taken the hydrant had been replaced in the identical position it had occupied immediately after the accident.

**9. Damages § 11—**

The annuity tables are incompetent in evidence in an action to recover for permanent injury negligently inflicted. G.S. 8-47.

**10. Appeal and Error § 39e—**

In an action to recover for permanent injuries, the admission in evidence of the annuity tables will not be held prejudicial when it is apparent from the record that plaintiff intended to offer in evidence only the mortuary tables and that the reference to G.S. 8-47 was a mere inadvertence, and that the jury was not advised at any time as to the contents of the annuity tables and did not consider them in any way in reaching their verdict.

**11. Same—**

The admission of testimony over objection cannot be held prejudicial when the record discloses that testimony of the same import was admitted during the trial without objection.

**12. Negligence § 16—**

Where defendant relies upon contributory negligence, he is required specifically to plead in his answer the acts or omissions of plaintiff relied

upon as constituting contributory negligence, and prove them at the trial. G.S. 1-139.

**13. Pleadings § 24—**

Allegation without proof and proof without allegation are equally unavailing.

**14. Automobiles §§ 18a, 20a—**

Defendant driver, sued by a guest in his car for negligent injury sustained by her when the car hit a fire hydrant, is not entitled to have the issue of contributory negligence submitted to the jury upon the theory that he hit the hydrant because plaintiff was voluntarily kissing him at the time, in the absence of allegation in the answer setting forth this circumstance.

**15. Damages § 13a—**

Where there is evidence that plaintiff suffered a permanent facial disfigurement impairing her earning capacity after majority, the court is warranted in instructing the jury that it should consider whether such impairment existed in passing upon the question of damages, limiting any award to the present net worth of any impairment of earning capacity after plaintiff's majority.

WINBORNE, J., concurring in part and dissenting in part.

APPEAL by defendants from *Burney, J.,* and a jury, at November Term, 1952, of LENOIR.

Civil action by guest to recover damages from automobile operator and automobile owner for personal injuries suffered by guest when automobile left roadway and struck nearby hydrant.

John F. Wooten, Sr., a resident of Kinston, maintained an Oldsmobile car for the general convenience, pleasure, and use of members of his family, including his son, John F. Wooten, Jr., a 17-year-old schoolboy. About one o'clock on the morning of 6 June, 1951, John F. Wooten, Jr., was driving the Oldsmobile by permission of his father for his own individual pleasure along a public road in the vicinity of the Kinston Airport. He was accompanied by a guest, Dorothy Hunt, an 18-year-old schoolgirl, who rode beside him on the front seat. The Oldsmobile car suddenly left the roadway and struck a nearby hydrant, casting Dorothy Hunt headlong against the windshield. The impact inflicted upon her somewhat disfiguring injuries.

Dorothy Hunt brought this action against her host, John F. Wooten, Jr., and his father, John F. Wooten, Sr., for the recovery of damages allegedly resulting from her personal injuries. The complaint charged that the injuries were caused by the actionable negligence of John F. Wooten, Jr., in the operation of a family purpose automobile furnished by John F. Wooten, Sr. The answer admitted the applicability of the

family purpose doctrine to the case. Dorothy Hunt sued by her next friend, and John F. Wooten, Jr., defended by his guardian *ad litem*.

Both sides offered testimony at the trial. Issues were submitted to and answered by the jury as follows:

1. Was the plaintiff Dorothy Hunt injured by the negligence of the defendants as alleged?

Answer: Yes.

2. What amount in damages, if any, is the plaintiff entitled to recover? Answer: $30,000.00.

The court entered judgment on the verdict, and the defendants appealed, assigning errors.

*Thos. J. White for plaintiff, appellee.*
*Sutton & Greene for defendants, appellants.*

ERVIN, J. The defendants concede with commendable candor the sufficiency of the plaintiff's evidence to make out a case of actionable negligence on their part. They lay claim to a new trial, however, on the ground that the presiding judge committed reversible error in admitting testimony, in failing to submit an issue of contributory negligence, and in charging the jury.

As a general rule, an appellant must establish these three propositions by the case on appeal to obtain a new trial for error of the trial judge in admitting evidence:

1. That he objected to the admission of the evidence in the trial court. *Carpenter, Solicitor, v. Boyles,* 213 N.C. 432, 196 S.E. 850; *Ferebee v. Berry,* 168 N.C. 281, 84 S.E. 262; *Sykes v. Everett,* 167 N.C. 600, 83 S.E. 585; *Peyton v. Shoe Co.,* 167 N.C. 280, 83 S.E. 487; *Hooper v. Hooper,* 165 N.C. 605, 81 S.E. 933.

2. That the evidence was inadmissible in law because it was incompetent (*Ballard v. Ballard,* 230 N.C. 629, 55 S.E. 2d 316; *Robbins v. Alexander,* 219 N.C. 475, 14 S.E. 2d 425), or immaterial (*Sprout v. Ward,* 181 N.C. 372, 107 S.E. 214; *Heileg v. Dumas,* 69 N.C. 206; *Devries v. Phillips,* 63 N.C. 207; *Madden v. Porterfield,* 53 N.C. 166; *Adams v. Clark,* 53 N.C. 56), or irrelevant, *Freeman v. Ponder,* 234 N.C. 294, 67 S.E. 2d 292.

3. That the evidence was prejudicial to his cause of action or defense. *Collins v. Lamb,* 215 N.C. 719, 2 S.E. 2d 863; *Williams v. Stores Co., Inc.,* 209 N.C. 591, 184 S.E. 496; *Rierson v. Iron Co.,* 184 N.C. 363, 114 S.E. 467; *Jenkins v. Long,* 170 N.C. 269, 87 S.E. 47; *Morgan v. Fraternal Association,* 170 N.C. 75, 86 S.E. 975; *In re Rawlings' Will,* 170 N.C. 58, 86 S.E. 794; *Lupton v. Express Co.,* 169 N.C. 671, 86 S.E. 614; *Fruit Distributors v. Foster,* 169 N.C. 39, 85 S.E. 130; *Hodges v.*

*Wilson,* 165 N.C. 323, 81 S.E. 340; *In re Will of Parker,* 165 N.C. 130, 80 S.E. 1057.

This general rule is subject to an exception not germane to the instant case. *Presnell v. Garrison,* 122 N.C. 595, 29 S.E. 839; *Hooper v. Hooper, supra.*

The defendants have no legal ground for their present complaint that the presiding judge erred in admitting the opinion evidence of the plaintiff's witness J. C. Grady in relation to the effect of the depletion of the battery upon the headlights of an Oldsmobile car similar to the one involved in the accident. This is true because they did not object at the trial to the admission of this evidence. When the case on appeal is read aright, it appears that the defendants took only two objections during the examination of Grady. One of them was addressed to the preliminary finding of fact of the presiding judge that Grady was competent to testify as an expert in respect to automobile batteries. The other was directed to an unanswered question put to Grady by counsel for plaintiff. The finding of the presiding judge as to the competency of Grady to testify as an expert was sustained by evidence at the trial, and in consequence is not subject to attack on this appeal. *S. v. Cofer,* 205 N.C. 653, 172 S.E. 176; *Nance v. Fertilizer Co.,* 200 N.C. 702, 158 S.E. 486; *Rangely v. Harris,* 165 N.C. 358, 81 S.E. 346; *Horne v. Power Co.,* 144 N.C. 375, 57 S.E. 19; *Allen v. Traction Co.,* 144 N.C. 288, 56 S.E. 942; *Geer v. Water Co.,* 127 N.C. 349, 37 S.E. 474.

The defendants also assign as error rulings of the presiding judge allowing one of the plaintiff's attending physicians, Dr. Oscar W. Crantz, to express his opinion as to what percentage of the plaintiff's face was disfigured by her injuries; letting the plaintiff's aunt, Mrs. M. H. Clayton, point out to the jury places where implanted skin had been grafted upon the plaintiff's face to minimize the disfigurement resulting from her injuries; permitting the plaintiff to exhibit in court as demonstrative or real evidence the hydrant struck by the Oldsmobile; and receiving in evidence the mortuary tables embodied in G.S. 8-46, the annuity tables incorporated in G.S. 8-47, photographs of the plaintiff taken before and after the injury, and a photograph of the hydrant.

The testimony of Dr. Crantz and Mrs. Clayton was rightly received under the rule that in an action to recover damages for a personal injury tortiously inflicted, evidence as to the physical condition of the injured plaintiff both before and after the injury is admissible to show the character, extent, and probable effect of the injury. *Solomon v. Koontz,* 189 N.C. 837, 127 S.E. 516; *Jordan v. Motor Lines,* 182 N.C. 559, 109 S.E. 566; *Brown v. Railroad,* 147 N.C. 136, 60 S.E. 898; 25 C.J.S., Damages, section 147. Dr. Crantz was a medical expert testifying to matters within his personal knowledge. *Spivey v. Newman,* 232 N.C. 281, 59 S.E. 2d

844; *Williams v. Stores Co., Inc., supra.* Mrs. Clayton was merely describing the physical appearance of the injured plaintiff as observed by a nonexpert or lay witness. *Brown v. Railroad, supra;* 32 C.J.S., Evidence, sections 467, 513.

The testimony tended to show that the plaintiff's injuries are permanent in character. This being true, it was proper for the presiding judge to permit the plaintiff to introduce and the jury to consider the mortuary tables embodied in G.S. 8-46. *Bullock v. Williams,* 212 N.C. 113, 193 S.E. 170; *Hubbard v. R. R.,* 203 N.C. 675, 166 S.E. 802; *Odom v. Lumber Co.,* 173 N.C. 134, 91 S.E. 716; *Sledge v. Lumber Co.,* 140 N.C. 459, 53 S.E. 295; *Georgia Automatic Gas Co. v. Fowler,* 77 Ga. App. 675, 49 S.E. 2d 550; *Advance v. Thompson,* 387 Ill. 77, 55 N.E. 2d 57; *Louisville, N. A. & C. R. Co. v. Miller,* 141 Ind. 533, 37 N.E. 343; *Fournier v. Zinn,* 257 Mass. 575, 154 N.E. 268; *Banks v. Braman,* 195 Mass. 97, 80 N.E. 799; *Daniels v. Boston & M. R. Co.,* 184 Mass. 337, 68 N.E. 337. The presiding judge instructed the jury in conformity with approved precedents that the mortuary tables are merely evidentiary on the question of expectancy. *Bullock v. Williams, supra; Odom v. Lumber Co., supra.*

The plaintiff's witness Frank Crary identified the hydrant offered in evidence as the hydrant struck by the Oldsmobile, and testified with positiveness that the hydrant had not been altered in any way since the accident. This being so, the presiding judge did not err in permitting the jury to inspect the hydrant. The inspection of this object was calculated to enable the jury to understand the evidence, and to realize more completely its cogency and force. *S. v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572, 28 A.L.R. 2d 1104; *S. v. Speller,* 230 N.C. 345, 53 S.E. 2d 294.

The photographs of the plaintiff antedating and following the injury were rightly received in evidence under the rule that whenever it is relevant to describe a person, photographs of such person are admissible for the purpose of explaining the evidence of the witnesses relating to his appearance and aiding the jury in understanding such evidence. *Coach Co. v. Lee,* 218 N.C. 320, 11 S.E. 2d 341; *Davis v. Railroad,* 136 N.C. 115, 48 S.E. 591. The photographers and other witnesses testified that the photographs were accurate likenesses of the plaintiff at the times they were taken. *White v. Hines,* 182 N.C. 275, 109 S.E. 31; *Bane v. R. R.,* 171 N.C. 328, 88 S.E. 477. The presiding judge gave the jury the customary instruction that the photographs were not admitted as original or substantive evidence, but were received solely for the purpose of enabling the witnesses to explain, and the jury to understand, the testimony. *S. v. Rogers, supra; Coach Co. v. Motor Lines,* 229 N.C. 650, 50 S.E. 2d 909; *S. v. Gardner,* 228 N.C. 567, 46 S.E. 2d 824; *Pearson v. Luther,* 212 N.C. 412, 193 S.E. 739; *Kelly v. Granite Co.,* 200 N.C. 326, 156 S.E. 517; *Honeycutt v. Brick Co.,* 196 N.C. 556, 146 S.E. 227; *Elliott v.*

*Power Co.,* 190 N.C. 62, 128 S.E. 730; *S. v. Jones,* 175 N.C. 709, 95 S.E. 576; *Hoyle v. Hickory,* 167 N.C. 619, 83 S.E. 738; *Pickett v. R. R.,* 153 N.C. 148, 69 S.E. 8.

The photograph of the hydrant was taken at the scene of the accident six months after that event occurred. The evidence disclosed that the plaintiff's witness Frank Crary removed the hydrant shortly after the accident and replaced it just before it was photographed. Notwithstanding this evidence, the trial judge did not err in admitting the photograph of the hydrant, which was verified by its maker, for the limited purpose sanctioned by the decisions cited above. This is true because Crary testified that when he replaced the hydrant, it was in the identical position occupied by it immediately after the accident. Posed photographs of the reconstructed scene of an accident are admissible where such photographs are properly identified by a witness as being accurate representations of the conditions at the scene as he saw them at the time in issue. *Jewel Tea Co. v. McCrary,* 197 Ark. 294, 122 S.E. 2d 534; *Reed v. Davidson Drug Co.,* 97 Colo. 462, 50 P. 2d 532; *State v. Ebelsheiser,* 242 Iowa 49, 43 N.W. 2d 706, 19 A.L.R. 2d 865; *Lewis v. Chicago Great Western R. Co.,* 155 Minn. 381, 193 N.W. 695; *Favre v. Louisville & N. R. Co.,* 180 Miss. 843, 178 So. 327; *Fulton v. Chouteau County Farmers' Co.,* 98 Mont. 48, 37 P. 2d 1025; *Bailey v. Greeley General Warehouse Co.* (Ohio App.), 83 N.E. 2d 244; *Dofner v. Branard* (Tex. Civ. App.), 236 S.W. 2d 544; *Thayer v. Glynn,* 93 Vt. 257, 106 A. 834; *Farmer v. School Dist. No. 214, King County,* 171 Wash. 278, 17 P. 2d 899, 115 A.L.R. 1171.

This brings us to the assignment of error based on the admission in evidence of the annuity tables incorporated in G.S. 8-47. These tables have no place in an action to recover damages for personal injuries tortiously inflicted for the very simple reason that the action does not involve the establishment of the present worth of an annuity to any person. *Brown v. Lipe,* 210 N.C. 199, 185 S.E. 681; *Poe v. Railroad,* 141 N.C. 525, 54 S.E. 406. The only mention of the annuity tables in the entire case on appeal is that appearing by implication only in this rather ambiguous recitation: "The plaintiff offered in evidence the mortuary or life tables, G.S. 8-46 and *8-47.*" It is obvious that counsel for the plaintiff merely intended to offer in evidence the mortuary tables embodied in G.S. 8-46, and that his reference to G.S. 8-47 was a mere inadvertence. It is likewise obvious that the presiding judge understood that counsel for the plaintiff was merely offering in evidence the mortuary tables embodied in G.S. 8-47. He made no mention of the annuity tables in his charge to the jury. When it is read aright in its entirety, the case on appeal compels the conclusion that the jurors were not advised at any time as to the contents of the annuity tables, and that they did not consider the annuity tables in any way in reaching their verdict. This being so, the defend-

ants have failed to establish by the case on appeal that the offering and receiving of the annuity tables was prejudicial to their defense. *Freeman v. Ponder, supra; Dellinger v. Building Co.,* 187 N.C. 845, 123 S.E. 78.

The defendants duly objected at the trial to the admission of the testimony of the plaintiff's mother, Mrs. Augusta H. Hunt, concerning her instructions to the plaintiff as to the time for returning home at night, and the testimony of the plaintiff's aunt, Mrs. M. H. Clayton, respecting the plaintiff's difficulties as a student during the scholastic year next succeeding the accident. They waived these objections, however, by allowing these witnesses to testify to virtually the same facts without objection in other portions of their examinations. The like observation applies to the objection to the admission of the testimony of the defendant John F. Wooten, Sr., which was drawn out by counsel for plaintiff on cross-examination, that he replaced the damaged Oldsmobile with a Cadillac. The defendants lost the benefit of this objection by permitting counsel for plaintiff to elicit the same evidence from John F. Wooten, Sr., a second time without objection. *Spivey v. Newman, supra; White v. Disher,* 232 N.C. 260, 59 S.E. 2d 798; *Landis v. Gittlin,* 229 N.C. 521, 50 S.E. 2d 298; *Lambert v. Caronna,* 206 N.C. 616, 175 S.E. 303; *Bateman v. Brooks,* 204 N.C. 176, 167 S.E. 627; *Colvard v. Light Co.,* 204 N.C. 97, 167 S.E. 472; *Gray v. High Point,* 203 N.C. 756, 166 S.E. 911; *Bank v. Florida-Carolina Estates, Inc.,* 200 N.C. 480, 157 S.E. 424; *Thompson v. Buchanan,* 198 N.C. 278, 151 S.E. 861; *Tilghman v. Hancock,* 196 N.C. 780, 147 S.E. 300.

The defendants excepted to the refusal of the presiding judge to submit to the jury an issue of contributory negligence tendered by them.

The statute now codified as G.S. 1-139 specifies that "in all actions to recover damages by reason of the negligence of the defendant, where contributory negligence is relied upon as a defense, it must be set up in the answer and proved on the trial." The defendant must meet the two requirements of this statute to obtain the benefit of the affirmative defense of contributory negligence. The first requirement is that the defendant must specially plead in his answer an act or omission of the plaintiff constituting contributory negligence in law; and the second requirement is that the defendant must prove on the trial the act or omission of the plaintiff so pleaded. Allegation without proof and proof without allegation are equally unavailing to the defendant. *Bruce v. O'Neal Flying Service,* 234 N.C. 79, 66 S.E. 2d 312; *Rollison v. Hicks,* 233 N.C. 99, 63 S.E. 2d 190; *Grimm v. Watson,* 233 N.C. 65, 62 S.E. 2d 538; *Dalrymple v. Sinkoe,* 230 N.C. 453, 53 S.E. 2d 437; *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307; *Bevan v. Carter,* 210 N.C. 291, 186 S.E. 321; *Ramsey v. Furniture Co.,* 209 N.C. 165, 183 S.E. 536; *Farrell v. Thomas & Howard Co.,* 204 N.C. 631, 169 S.E. 224; *Murphy v. Power Co.,* 196

N.C. 484, 146 S.E. 204; *Moore v. Iron Works,* 183 N.C. 438, 111 S.E. 776; *Kearney v. R. R.,* 177 N.C. 251, 98 S.E. 710; *Fleming v. R. R.,* 160 N.C. 196, 76 S.E. 212; *Jeffress v. R. R.,* 158 N.C. 215, 73 S.E. 1013; *Wright v. R. R.,* 155 N.C. 325, 71 S.E. 306; *Watson v. Farmer,* 141 N.C. 452, 54 S.E. 419; *Smith v. Railroad,* 129 N.C. 374, 40 S.E. 86; *Cox v. Railroad,* 123 N.C. 604, 31 S.E. 848; *Hudson v. Railroad,* 104 N.C. 491, 10 S.E. 669; *Wallace v. Railroad,* 104 N.C. 442, 10 S.E. 552.

When the instant case is reviewed in the light of the statutory requirements, it is manifest that the presiding judge did not commit legal error in refusing to submit an issue of contributory negligence to the jury. The defendants alleged with particularity in their answer that the plaintiff was contributorily negligent in specified ways. There was, however, no evidence at the trial tending to sustain these allegations. The youthful defendant gave this testimony: "I ran off the road because she and I were kissing each other . . . That is the only reason that I was not looking where I was going." There was, however, no mention of this incident in the answer. In the absence of appropriate allegations on the subject, the presiding judge was neither required nor permitted to leave to the jury the question whether the plaintiff distracted the attention of her host from the operation of the automobile by sharing a kiss with him and thus proximately contributed to the accident and her resultant injuries.

It was intimated on the oral argument that the defendants did not specially plead the kissing episode as contributory negligence on the part of the plaintiff because the youthful defendant did not reveal the incident to their counsel until the trial of this action was under way. His reluctance to kiss and tell is understandable. But it does not nullify the positive legislative declaration that a defendant cannot rely on an act or omission of contributory negligence unless it is pleaded as well as proved. The transcript of the record does not show any invocation of the discretionary power of the presiding judge to permit an amendment.

The assignments of error based on exceptions to the charge are untenable. The evidence was sufficient to support a finding that the injured minor plaintiff suffered a permanent physical disability, impairing her earning capacity after majority, so as to warrant the instruction that the jury should consider whether such impairment existed in passing on the question of damages. *Cross v. Sharaffa,* 281 Mass. 329, 183 N.E. 838. The presiding judge made it plain to the jurors that they should limit any award of damages for any impairment of the plaintiff's earning power after reaching her majority to their present worth. *Shipp v. Stage Lines,* 192 N.C. 475, 135 S.E. 339.

The errors apparent on the present record are human errors. We are empowered by law to correct legal errors only. In consequence, the trial and judgment must be upheld.

No error.

WINBORNE, J., concurring in part and dissenting in part: In the refusal of the trial court to submit an issue as to alleged contributory negligence of plaintiff, there is, in my opinion, error, for which a new trial should be awarded.

I agree that the statute G.S. 1-139 provides that "in all actions to recover damages by reason of the negligence of the defendant, where contributory negligence is relied upon as a defense, it must be set up in the answer and proved on the trial." I also agree that it is elementary in the law of pleading and practice that here must be both allegation and proof as the statute provides. And I agree, as stated in the majority opinion, that defendants have pleaded contributory negligence. But I do not agree that there was no evidence at the trial tending to sustain these allegations.

I hold that defendants have offered evidence of sufficient probative value to support the plea, and that the allegation is sufficient to embrace the kissing incident and to render evidence thereof pertinent on the issue of contributory negligence. It is provided by statute G.S. 1-135 that the answer of defendant must contain "a statement of any new matter constituting a defense . . . in ordinary and concise language, without repetition." And McIntosh in his North Carolina Practice and Procedure, p. 487, speaking of contributory negligence, says that defendant "must plead it specially, stating the circumstances which constitute the contributory negligence." In other words, it is the ultimate facts, and not evidentiary matters that have a place in the answer.

The averments on which defendants base their plea of contributory negligence are these: "6. That . . . as the automobile left the said gravel covered area and entered the said paved roadway, the plaintiff turned her body sidewise and to the left so that she was facing directly toward the said John F. Wooten, Jr., and so that her weight rested upon and along the front portion of the seat in which they were riding and engaged in animated conversation with said minor defendant in a manner which was calculated to divert and which did . . . divert his mind from the physical and mental processes of driving . . . and while the said defendant was so driving and the plaintiff was so sitting and directing her conversation to him, he suddenly discovered . . . a fire plug directly in his path and a few feet only away . . . and although the automobile was moving at a comparatively slow rate of speed . . . it was impossible to stop the said automobile before it struck the said fire plug . . ."

The ultimate fact averred is that plaintiff engaged minor defendant "in animated conversation . . . in a manner which was calculated to divert and which did . . . divert his mind from the physical and mental processes of driving . . ."

Now what is the evidence? Plaintiff testified: "I probably did state after this happened that I didn't think he (John, Jr.) was any more to

blame than I was. On this particular night, just before the collision took place, I was sitting facing him, and he and I were taking very much interest in each other." (R. p. 46.) Plaintiff also testified: "I was talking to him and sitting there facing him at the time of the wreck." (R. p. 48.) And again, plaintiff testified: "I was conversing with him." (R. p. 117.) Certainly these statements of plaintiff are some evidence that she and John, Jr., were in conversation.

Then was it an animated conversation? Defendant John, Jr., when upon the stand as a witness, testified: "Right after we got around this corner, she leaned over towards me and I leaned over slightly toward her, and we kissed. We were on the pavement at that time." (R. p. 145.)

Again, on cross-examination, defendant John, Jr., was asked: "Why do you say you ran off the road?" A. "Well, er, I was occupied in other ways at the time. I wouldn't say I was kissing Dot at the time; she was kissing me. No, I wouldn't want to say that either; by mutual agreement, you might say, and it just happened . . ." (R. p. 152.)

And on re-direct examination defendant John, Jr., concluded: "I thought I was headed straight down the road. And Miss Dorothy leaned over to me, and I leaned towards her, too, and we kissed together; each one kissed the other. And I looked back again and the hydrant was right in front of me; that is about it. I hollered out 'Look out,' and tried to apply my brakes but I didn't have time." (R. pp. 158-9.)

Surely this matter of kissing is evidence from which the jury could infer that it was a mutual affair and an incident to the conversation.

And clearly the evidence is sufficient to support a finding that the conversation was animated. Repeating, I say the kissing is evidence of the ultimate fact alleged, but is not the ultimate fact to be alleged. Hence, failure to allege it is not fatal to defendant's plea.

Moreover, in the course of his testimony, defendant John, Jr., testified: "Nothing was said in that answer about my kissing the girl or her kissing me. Nobody knew about it until yesterday. Nobody that I had told."

The factual background and setting of the occurrence here under consideration as shown by the evidence offered on trial sheds light on the situation. It is as follows:

Plaintiff was 18 years of age, and a senior in high school. Defendant, John, Jr., was 17 years of age and a junior in high school. He and she had been going together two or three months. But being a junior he could not take part in entertainments at commencement time unless invited by a senior. So plaintiff invited him to be her escort. And on the night of 5 June, 1951, he took her in his father's car to various places where entertainment was had. Then he heard that there was to be an open-air dance out at the airport. So he and she drove out there, but did not stop. They drove on further to a paved place behind or beside the

gym, or recreation building. No one else was there. And plaintiff testified: "John and I parked right there at the recreation building and sat there and talked to be quiet." But they did alight, and in the language of plaintiff: "We played the radio there and danced there. Nobody there but John and me. I was not in a hurry to get home. Not until 12:30 I wasn't." And defendant John, Jr., testified: "When I finally did start, I came out back of the gym and headed down the drive which runs beside the gym, towards the road on which I had the wreck . . ."

For reasons stated, I vote for a new trial.